IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DEREK CHAPMAN, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | Civil Action No. ADC-23-442 |
| | * | |
| MARYLAND DEPARTMENT OF STATE | * | |
| POLICE, OFFICE OF THE STATE | * | |
| FIRE MARSHALL, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Defendant Maryland Department of State Police, Office of the State Fire Marshall, moves this Court to dismiss Plaintiff Derek Chapman's Complaint. ECF Nos. 1, 6. After considering the Motion and the responses thereto (ECF Nos. 6, 10, 13), the Court finds that no hearing is necessary.[1] Loc.R. 105.6 (D.Md. 2023). For the reasons stated herein, Defendant's Motion to Dismiss is GRANTED in part and DENIED in part.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a Black African American male who began working at the Maryland Department of State Police, Office of the State Fire Marshal ("OSFM"), in 1998.[2] ECF No. 1 at ¶¶2, 14, 18, 19. He achieved the rank of Deputy Chief State Fire Marshal and was the highest-ranking Black employee at the OSFM. *Id.* at ¶19. In this role, he was in charge of commanding and managing the Northeast Region of OSFM, which is the Department's busiest region, and was

---

[1] On February 17, 2023, this case was assigned to United States Magistrate Judge A. David Copperthite for all proceedings pursuant to Standing Order 2019-07. ECF Nos. 3, 7. All parties voluntarily consented in accordance with 28 U.S.C. § 636(c). ECF No. 9.
[2] The Office of the State Fire Marshal is an agency within the Maryland Department of State Police. ECF No. 6-1 at 1-2.

1

responsible for "submitting origin and cause reports to Chief Deputy State Fire Marshal ("CDFM") Gregory Der." *Id.* at ¶20.

In or around February 2020, in recognition of Black History Month, Plaintiff sent his colleagues an email highlighting the work of a Black inventor who "pav[ed] the way for firefighters." *Id.* at ¶27. In a meeting the following day, the Fire Marshal "drew a problematic comparison between black dogs and [the] celebrated inventor" and joked that "the Department could make a Facebook post about black Labrador retrievers, in honor of black history month." *Id.* Plaintiff was "insulted" by this comment and "felt that the Fire Marshal saw him and other Black colleagues as more akin to dogs than as equals to White Officers." *Id.* at ¶27.

Shortly after the Fire Marshal made this comment, Plaintiff went out on medical leave to recover from kidney cancer. *Id.* at ¶28. In March 2021, after Plaintiff returned to the OSFM, he and CDFM Der met to discuss Plaintiff's backlog of reports. *Id.* at ¶29. Although backlogged reports were a "department-wide issue," CDFM Der singled out Plaintiff for failing to timely file his mandatory reports and refused to provide Plaintiff with additional resources to ensure that the reports were completed on time. *Id.* at ¶¶29-30.

Thereafter, Plaintiff was informed that the "Fire Marshal and Chief Deputy had planned to make unilateral changes to Plaintiff's [assigned] region[.]" *Id.* at ¶31. He met with CDFM Der for a second time on March 21, 2021, at which time CDFM Der told Plaintiff that "he was removing Cecil County from Plaintiff's purview and reassigning it to the Upper Shore Office . . . due to his use of sick leave and his overdue reports." *Id.* at ¶¶32-33. During this meeting, Plaintiff and CDFM Der also discussed that two OSFM Commanders had made race-related comments in Plaintiff's presence. *Id.* at ¶32. While Plaintiff wished for this conversation to remain private, he later learned

that CDFM Der immediately informed the Commanders, as well as several other Department employees, of these allegations. *Id.* at ¶¶34-35.

In June 2021, Plaintiff filed an internal harassment and discrimination complaint with the Fair Practice Unit against CDFM Der and SFM Geraci. *Id.* at ¶38. The Director of the Fair Practice Unit, however, ultimately informed Plaintiff that "CDFM Der was not part of the harassment/discrimination allegations." *Id.* That same month, Plaintiff was "relieved of his responsibilities and duties," and transferred from his post to the CDFM headquarters "under the pretext of backlogged reports." *Id.* at ¶36. After this transfer, he was counseled by CDFM Der for failing to submit 10 overdue reports. *Id.* at ¶37.

Plaintiff filed another internal complaint against CDFM Der for "violating the Core Values Policy, by lying, misrepresentation of facts, harassment, and bullying" on August 16, 2021. *Id.* at ¶39. Although Plaintiff had several meetings with members of the Personnel Administration Section of the Internal Affairs Division, he was ultimately informed that there was nothing that could be done about CDFM Der's behavior. *Id.* at ¶¶40-41. Shortly after this complaint was lodged, on September 3, 2021, Plaintiff again attempted to meet with CDFM Der to resolve his report backlog. *Id.* at ¶42. CDFM Der, however, reacted "harshly, coldly and focused not on the solutions or gains that Plaintiff had made." *Id.* at ¶42.

On October 12, 2021, Plaintiff was suspended from his job at the OSFM. *Id.* at ¶43. While on suspension, Plaintiff met with the Deputy Director of the Office of Equity and Inclusion who advised Plaintiff to "keep his mouth shut and [that] this would cost him money." *Id.* at ¶46. Plaintiff was reinstated on March 16, 2022 after Internal Affairs completed its investigation into his failure to timely complete his reports. *Id.* at ¶50. Just days after he was reinstated, Plaintiff received an email from SFM Geraci accusing him of "being disgruntled and [giving] him a timeframe to get

3

reports completed, no matter if he was on approved leave or not." *Id.* at ¶51. Several months later, Plaintiff was involuntarily moved from OSFM's Elkton office to its Bel Air office. *Id.* at ¶52. Plaintiff was not given advanced notice of this transfer and his personal and work items were removed from the Elkton office without his knowledge or consent. *Id.* He was later told that he was transferred because his Elkton office needed to be converted into an evidence locker. *Id.*

On February 13, 2023, while on FMLA leave pending surgery, "Plaintiff received a letter containing a performance evaluation dated December 14, 2022 rating his performance as unsatisfactory, highlighting his reports as an ongoing area of concern and claiming that he was failing to follow orders." *Id.* at ¶59. According to Plaintiff, his backlog was "the same" as his white predecessors. *Id.* at ¶60.

Plaintiff filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") on February 18, 2022. *Id.* at ¶8. He received his right to sue letter on November 22, 2022 and filed the instant action in this Court on February 17, 2023. ECF No. 1 at ¶ 9. Plaintiff asserts claims of Race Discrimination, Color Discrimination, and Retaliation in violation of Title VII (Counts I-III), violation of the Maryland Fair Employment Practices Act ("FEPA") (Count IV), Retaliation in violation of the Family and Medical Leave Act ("FMLA") (Count V), and violations of 42 U.S.C. §1981 and 42 U.S.C. §1983 (Count VI). *Id.* at ¶¶65-161. Defendant filed the instant Motion to Dismiss on May 19, 2023. ECF No. 6. Plaintiff responded in opposition on June 2, 2023 and Defendant replied on June 15, 2023. ECF Nos. 10, 13.

## DISCUSSION

**Standard of Review**

<u>Motion to Dismiss Under Rule 12(b)(6)</u>

The purpose of a Rule 12(b)(6) motion is to test the sufficiency of the Complaint, not to

"resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). The Complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists when Plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* An inference of a "mere possibility of misconduct" is not sufficient to support a plausible claim. *Id.* at 679. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. When considering a motion to dismiss, the Court must accept all factual allegations in the Complaint as true, but not legal conclusions couched as factual allegations. *Id.* (citations omitted). When deciding a motion under Rule 12(b)(6) courts may, in addition to the complaint and matters of public record, "consider documents attached to the complaint, *see* Fed.R.Civ.P 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Phillips v. Pitt Cnty. Mem'l. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *see also Episcopal Church in S.C. v. Church Ins. Co. of Vt.*, 997 F.3d 149, 154 (4th Cir. 2021) ("[W]e may consider authentic, extrinsic evidence that is integral to the complaint, as well as matters of public record.").

Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)

This Court reviews the defense of Eleventh Amendment sovereign immunity under Federal Rule of Civil Procedure 12(b)(1). "The Fourth Circuit has not decided whether sovereign immunity is grounds for dismissal for failure to state a claim under Rule 12(b)(6) or for lack of subject matter jurisdiction under Rule 12(b)(1), but this Court favors analysis under Rule 12(b)(1) because immunity functions 'as a block on the exercise of that jurisdiction.'" *Krell v. Queen Anne's Cnty.*,

No. JKB-18-637, 2018 WL 6523883, at *3 (D.Md. Dec. 12, 2018) (quoting *Gross v. Morgan State Univ.*, 308 F.Supp.3d 861, 865 (D.Md. 2018)). The burden of establishing the court's subject matter jurisdiction rests with the plaintiff. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). "Where defendants raise the defense of sovereign immunity, they make a facial challenge to the complaint." *Krell*, 2018 WL 6523883 at *3 (citing *Weiss v. Price*, No. ELH-17-1127, 2018 WL 1156770, at *2 (D.Md. March 5, 2018)). Under a "facial challenge," the "plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).

**Defendant's Motion to Dismiss**

Eleventh Amendment Sovereign Immunity

The Eleventh Amendment provides that the "Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or Subjects of any Foreign State." U.S. Const., amend. XI. This Amendment has been interpreted to mean that the "Constitution does not provide for federal jurisdiction over suits against nonconsenting States." *Kimel v. Fl. Bd. of Regents*, 528 U.S. 62, 73 (2000); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). Moreover, "state sovereign immunity bars suits against instrumentality of a state, sometimes referred to as an 'arm of the state,' including state agencies." *Pevia v. Hogan*, 443 F.Supp.3d 612, 630-31 (D.Md. 2020). As such, suits against a State, or state instrumentalities, are not permitted unless one of the following three exceptions applies: (1) the State has waived its Eleventh

Amendment immunity; (2) Congress has abrogated the States' Eleventh Amendment immunity pursuant to a valid grant of constitutional authority; or (3) the suit seeks prospective injunctive relief against state officials. *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 248 (4th Cir. 2012).

The OSFM is an agency within the Maryland Department of State Police, which is a "principal department of the State Government." Md. Code Ann., Pub. Safety §2-201; Md. Code. Ann., State Gov't §8-201(b)(19). Because OSFM is under the exclusive control of a State department, the Court finds that it an instrumentality of the State. As such, the Court must determine whether any of the exceptions articulated above apply to Plaintiff's claims.

*42 U.S.C. § 1981 and §1982 Claims*

Defendant initially argues that Plaintiff's §1981 and §1983 claims are barred by Eleventh Amendment immunity. ECF No. 6-1 at 8-9. Plaintiff responds by arguing that Defendant is a "local governing body" that is not entitled to the protections of the Eleventh Amendment. ECF No. 10-1 at 3. I agree with Defendant.

As to the first exception, it is clear that the State of Maryland has not waived its immunity as to §1981 or §1983 claims. While the State of Maryland has "waived its sovereign immunity for certain types of cases brought in its own state courts, *see* Md. Code Ann., State Gov't §12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court." *Woody v. Md. Div. of Corr.*, No. PWG-20-1896, 2021 WL 3725436, at *2 (D.Md. Aug. 23, 2021). In fact, this Court has previously explained that "Defendant MSP is correct that Maryland has not waived its immunity as to §1983 [and] §1981 . . . claims." *Bishop v. Lewis*, No. WMN-10-3640, 2011 WL 1704755, at *2 (D.Md. May 4, 2011). The second exception is also inapplicable as "Congress did not abrogate the states' sovereign immunity when it enacted" §1981 and §1983. *See Pevia v.*

7

*Hogan*, 443 F.Supp.3d 612, 632 (D.Md. 2020) ("Congress did not abrogate the states' sovereign immunity when it enacted 42 U.S.C. §1983."); *Khan v. Maryland*, 903 F.Supp. 881, 888-89 (D.Md. 1995) (finding that Eleventh Amendment immunity barred Plaintiff's §1981 claim). And, finally, the third exception is similarly inapplicable because Plaintiff has not sued a state official and is not seeking injunctive relief. Accordingly, because Plaintiff's §§ 1981 and 1983 claims do not meet any of the exceptions articulated above, the Court finds that they are barred by Eleventh Amendment immunity.

In his motion, Plaintiff argues that, under *Monell v. Department of Social Services*, "local governing bodies can be held liable under Section 1983 without immunity conferred by the Eleventh Amendment." ECF No. 10-1 at 3. While this is true, as discussed above, Defendant is an instrumentality of the State of Maryland and not a "local governing body." It is well-established that State agencies, such as Defendant, may not be held liable under §1983 as they are not "persons" under the statute. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Foster v. Md. State Police*, No. RDB-08-2505, 2010 WL 311326, at *4 (D.Md. Jan 20, 2010) ("It is well-established that a State, and its constituent agencies, may not be held liable under Section 1983 because it is not a 'person' under the statute."); *Chin v. Baltimore*, 241 F.Supp.2d 546, 548 (D.Md. 2003) ("[A] state agency cannot be sued under §1983."). For these reasons, Count VI of Plaintiff's Complaint is dismissed.

*The FEPA Claim*

Defendant next argues that Plaintiff's FEPA claim is barred by Eleventh Amendment immunity. ECF No. 6-1 at 9. The Maryland Fair Employment Practices Act "is the state law analogue of Title VII and its interpretation is guided by federal cases interpreting Title VII." *Finkle v. Howard Cnty., Md.*, 12 F.Supp.3d 780, 784 (D.Md. 2014); *Peninsula Reg'l Med. Ctr. v. Atkins*,

8

448 Md. 197, 218-19 (2016). The statutory scheme includes, among other things, a consent to suit provision, which provides that "[t]he State, its officers, and its units may not raise sovereign immunity as a defense against an award in an employment discrimination case under this title." Md. Code Ann., State Gov't §20-903. While this provision, on its face, appears to waive the State's Eleventh Amendment immunity, the United States Court of Appeals for the Fourth Circuit, in *Pense v. Maryland Department of Public Safety & Correctional Services*, held that "because the consent to suit provision does not 'specify the State's intention to subject itself to suit in *federal court*,' that provision cannot be read to waive the State's Eleventh Amendment immunity." 926 F.3d 97, 102 (4th Cir. 2019) (citation omitted). Looking at the other provisions of FEPA, the Court explained that "neither the venue provision nor any other statute 'expressly indicat[es] that the State['s] consent to suit extends to suit in federal court." *Id.* (quoting *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 307 (1990)) (alteration in *Pense*). Accordingly, the Court was "constrained to conclude that" the consent to suit provision "does not constitute a consent to suit in federal court." *Id.* at 103.

Here, for the same reasons articulated by the Fourth Circuit in *Pense*, the Court finds that Defendant is entitled to Eleventh Amendment immunity on Plaintiff's FEPA claim. Therefore, Count IV of Plaintiff's Complaint is dismissed.

*The FMLA Retaliation Claim*

Defendant also argues that it is entitled Eleventh Amendment immunity on Plaintiff's FMLA retaliation claim. ECF No. 6-1 at 9-10. Among other things, the Family and Medical Leave Act allows eligible employees to take "12 workweeks of leave during any 12-month period" to (1) "care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition" (the "family-care provision") or (2) "[b]ecause of a serious

health condition that makes the employee unable to perform the functions of the position of such employee" (the "self-care provision"). 29 U.S.C. §2612(a)(1). "Claims can be brought under the FMLA for either interference with an entitlement to FMLA leave, or retaliation for exercising the right to FMLA leave." *Shipton v. Balt. Gas & Elec. Co.*, No. LKG-20-1926, 2023 WL 2894951, at *6 (D.Md. April 11, 2023) (citing 29 U.S.C. §2615(a)).

The Supreme Court of the United States has, for Eleventh Amendment purposes, drawn distinctions between the family-care and self-care provisions of the FMLA. In *Nevada Department of Human Resources v. Hibbs*, the Supreme Court held that Congress had validly abrogated Eleventh Amendment immunity for violations of the family-care provision. 538 U.S. 721, 730-32 (2003). This abrogation was, according to the Court, valid as Congress relied on overwhelming evidence that States had adopted family-leave policies that differentiated on the basis of sex and that States administered even neutral family-leave policies in ways that discriminated on the basis of sex. *Id.* However, in *Coleman v. Court of Appeals of Maryland.*, the Court reached the opposite conclusion regarding the FMLA's self-care provision. 566 U.S. 30, 38-43 (2012). In stark contrast to the family-leave provision, the Court reasoned that "[t]he evidence [before Congress] did not suggest States had facially discriminatory self-care leave policies or that they administered neutral self-care leave policies in a discriminatory way." *Id.* at 38. Accordingly, because Congress failed to "identify a pattern of constitutional violations," the Court concluded that "abrogating the States' immunity from suits for damages for failure to give self-care leave is not a congruent and proportional remedy[.]" *Id.* at 38, 43.

Here, Plaintiff's FMLA retaliation claim is brought pursuant to the statute's self-care provision as he asserts that he took leave to recover from kidney cancer. ECF No. 1 at ¶137. As the Supreme Court explained in *Coleman*, Congress has not abrogated Defendant's entitlement to

Eleventh Amendment immunity for FMLA self-care provision claims. Accordingly, the Court finds that Count V must be dismissed as Defendant is entitled to Eleventh Amendment immunity.[3]

### The Remaining Title VII Claims

Unlike his §1981, §1983, FEPA, and FMLA claims, Plaintiff's Title VII claims are not subject to Eleventh Amendment protection as Congress has abrogated immunity for Title VII suits "against a state in its capacity 'as employer.'"[4] *Savage v. Maryland*, 896 F.3d 260, 275 (4th Cir. 2018) (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976)). Defendant, however, argues that these claims should be dismissed as Plaintiff has failed to plausibly allege any violations of Title VII. ECF No. 6-1 at 10-15.

*The Race and Color Discrimination Claims*

Defendant first argues that Plaintiff's race and color discrimination claims fail as he has "not alleged facts suggesting his treatment was based on race," nor has he alleged facts suggesting that "his treatment was based on color." ECF No. 6-1 at 10, 12. Title VII prohibits an employer from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a)(1). "Absent direct evidence, the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job

---

[3] While Plaintiff does not argue otherwise, the Court notes that the Supreme Court's holding in *Coleman* does not distinguish between self-care provision interference claims and self-care provision retaliation claims. Instead, the Court generally held that Congress failed to properly abrogate Eleventh Amendment Immunity under the FMLA's self-care provision. *Coleman*, 566 U.S. at 43-44; *see also Alfred v. Harris Cnty. Hosp. Dist.*, 666 F.Appx. 349, 353 (5th Cir. 2016) ("[B]ecause States are immune from liability for claims arising under the self-care provision of the Act, the district court did not err in dismissing [the plaintiff's] FMLA self-care retaliation claim[.]"). Accordingly, like the self-care interference claim in *Coleman*, Plaintiff's self-care retaliation claim is barred by Eleventh Amendment immunity.

[4] Defendant does not argue that Plaintiff's Title VII claims are barred by Eleventh Amendment immunity. ECF No. 6-1.

performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). However, plaintiffs need not make out a prima facie case of discrimination to survive motions to dismiss. *Gaines v. Balt. Police Dep't.*, --F.Supp.3d--, 2023 WL 2185779, at *8 (D.Md. Feb. 22, 2023). Rather, a plaintiff need only plead "'sufficient factual allegations to support a plausible claim' that he suffered an adverse employment action motivated by bias or discrimination." *Young v. Montgomery Cnty., Md.*, No. PX-18-2054, 2019 WL 1596992, at *4 (D.Md. April 15, 2019) (quoting *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017)).

Plaintiff, through a comparator analysis, sufficiently alleges that he was treated differently from similarly situated Caucasian employees. ECF No. 1 at ¶60. *Carter v. Md. Aviation Admin*, No. CCB-02-3065, 2005 WL 1075328, at *4 n.1 (D.Md. May 6, 2005) ("Identifying one comparator [] who was treated more favorably may satisfy the prima facia test."). Plaintiff, the highest-ranking Black employee in the OSFM, alleges that he was harassed, belittled, involuntarily transferred, and suspended under the pretext of a "backlog of reports." *Id.* at ¶¶19, 21, 29, 31, 33, 36, 43, 51. While Plaintiff was disciplined for his report backlog, he asserts that his two immediate predecessors, Matthew Stevens (White male) and Sander Cohen (White male), had the same average backlog of reports but "were never charged pending termination as [he] was." *Id.* at ¶60. Because Plaintiff's predecessors were not similarly disciplined, Plaintiff's allegations, accepted as true, suggest that he was singled out and disciplined for his race and/or color as opposed to his backlog of reports. Accordingly, Plaintiff has sufficiently pleaded claims for race and color discrimination and Defendant's Motion is denied as to Counts I and II. *See Rorie v. Bd. of Educ. of Charles Cnty.*, No. TDC-20-3173, 2021 WL 4290872, at *6 (D.Md. Sept. 7, 2021) (finding that the plaintiff "has identified a similarly situated comparator so as to successfully allege a *prima*

*facie* case of race . . . discrimination at the pleading stage.").

### *The Retaliation Claim*

Finally, Defendant argues that Plaintiff has failed to state a claim for retaliation. ECF No. 6-1 at 14. Title VII prohibits an employer from retaliating against an employee because the employer opposed "any practice made an unlawful employment practice by [Title VII]," including complaining about discrimination to supervisors. 42 U.S.C. §2000e-3(a); *Hart v. Lew*, 973 F.Supp.2d 561, 579 (D.Md. 2013). The elements of a Title VII retaliation claim are: "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).

Here, Defendant does not dispute that Plaintiff has sufficiently pleaded that he engaged in protected activity and suffered an adverse employment action. According to the Complaint, Plaintiff informed CDFM Der and SFM Geraci that two commanders made "race-related comments . . . in his presence" and filed an internal complaint against CDFM Der for "violating the Core Values Policy, by lying, misrepresentation of facts, harassment, and bullying." ECF No. 1 at ¶¶ 32, 39. Plaintiff has, also, pleaded that he was suspended from his position shortly after engaging in protected activity. *Id.* at ¶43.

Defendant does, however, argue that Plaintiff has failed to sufficiently assert the third element of a Title VII retaliation claim, that there is a causal link between the protected activity and Plaintiff's suspension from OSFM. ECF No. 6-1 at 13-14. The United States Court of Appeals for the Fourth Circuit has explained that "establishing a 'causal relationship' at the *prima facie* stage is not an onerous burden." *Strothers v. City of Laurel*, 895 F.3d 317, 335 (4th Cir. 2018). In fact, the Court has held that "very little evidence of a causal connection is required to establish a

*prima facie* case of retaliation." *Burgess v. Bowen*, 466 F.App'x 272, 283 (4th Cir. 2012) (citation omitted).

A plaintiff may demonstrate that a protected activity caused an adverse action through two routes. *Johnson v. United Parcel Serv., Inc.*, 839 Fed.Appx 781, 782-83 (4th Cir. 2021). First, a plaintiff may establish the existence of facts that "suggest[] that the adverse action occurred because of the protected activity." *Id.* at 783-84. Second, a Plaintiff can establish that "the adverse act bears sufficient temporal proximity to the protected activity." *Id.* (citing *Clark Cnty. Sch. Dist v. Breeden*, 532 U.S. 268, 273-74 (2001)). While there is no "bright-line rule" for temporal proximity, the Fourth Circuit has found that, absent other evidence of a causal relationship, "a lapse of two months between the protected activity and the adverse action is 'sufficiently long so as to weaken significantly the inference of causation.'" *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 127 (4th Cir. 2021) (quoting *Horne v. Reznick Fedder & Silverman*, 154 F.App'x 361, 364 (4th Cir. 2005)). "The existence of relevant facts alone, or together with temporal proximity, may be used to establish a causal connection between the protected activity and the adverse action." *Id.*

Here, Plaintiff alleges in his Complaint that he was suspended from OSFM on October 12, 2021—57 days after he filed his Internal Affairs complaint against CDFM Der. ECF No. 1 at ¶¶39, 43. This gap in time is not so close as to create "a strong inference of retaliation." *Roberts*, 998 F.3d at 127. However, considering the temporal proximity together with the other facts alleged in Plaintiff's Complaint, the Court finds that he has sufficiently pleaded that his suspension was causally connected to his Internal Affairs complaint.

Plaintiff has pleaded facts suggesting that his suspension from OSFM was the culmination of a continuing practice of harassment and retaliation. *Id.* at ¶43. In his Complaint, Plaintiff alleges

14

that his suspension in October 2021 was one of several retaliatory actions taken against him by his supervisors at OSFM. ECF No. 1 at ¶23. He has pleaded that he was disciplined for "backlogged reports" but otherwise had no "performance infractions." *Id.* at ¶¶23, 26. Under the guise of this excessive report backlog, Plaintiff alleges that his supervisors decreased the size of his assigned region, transferred him to headquarters "without notice," relieved him of his "responsibilities and duties," suspended him, and removed his personal and work items from his office without notice. *Id.* at ¶¶31, 36, 52. These disciplinary measures were, however, all taken after Plaintiff initially complained about harassment and discrimination.

This gradually escalating retaliatory and harassing behavior, together with the temporal proximity of Plaintiff's suspension to his complaint, is sufficient at this stage to show that some or all of the adverse employment actions that Plaintiff suffered were causally connected to his discrimination and retaliation complaints. Accordingly, the Court denies Defendant's Motion as to Count III.

## CONCLUSION

For the reasons set forth in this Memorandum Opinion, Defendant's Motion to Dismiss (ECF No. 6) is GRANTED in part and DENIED in part. A separate Order will follow.

Date: 8 August 2023

A. David Copperthite
United States Magistrate Judge