IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DEREK CHAPMAN,                          *
                                        *
               Plaintiff,               *
        vs.                             *          Civil Action No. ADC-23-0442
                                        *
MARYLAND DEPARTMENT                     *
OF STATE POLICE,                        *
OFFICE OF THE STATE FIRE MARSHAL        *
                                        *
               Defendant.               *
                                        *

* * * * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM OPINION

The Maryland Department of State Police, Office of the State Fire Marshall ("OSFM" or "Defendant") move this Court for summary judgment (the "Motion") (ECF No. 31) on Plaintiff Derek Chapman's ("Plaintiff") Complaint. ECF No. 1. After considering the Motion and the responses thereto (ECF Nos. 31, 34, 36), the Court finds that no hearing is necessary. Loc.R. 105.6 (D.Md. 2023). In addition, having reviewed the pleadings of record and all competent and admissible evidence submitted, the Court finds that there are no genuine issues of material fact as to any of the claims asserted. Accordingly, the Court will GRANT Defendant's Motion for Summary Judgment.[1]

## FACTUAL BACKGROUND

Plaintiff is an African-American male who was hired by OSFM in 1998. ECF No. 34-1. OSFM, a statutorily created entity that falls under the Maryland State Police, exists to investigate fires or explosions and to enforce laws related to fires and arson. ECF No. 31. OSFM is divided

---

[1] On February 3, 2023, this case was assigned to United States Magistrate Judge A. David Copperthite for all proceedings in accordance with Standing Order 2019-07. ECF No. 3. All parties voluntarily consented in accordance with 28 U.S.C. § 636(c). ECF No. 9.

into smaller geographical regional offices. OSFM officers investigate fires within their region and prepare fire origin reports which document the cause of a fire, pronouncing it either accidental or intentional. The reports therefore inform the work of criminal investigators, prosecutors, and insurance professionals. *See* ECF No. 31.

In 2018, Plaintiff was promoted to Deputy Chief Fire Marshal and Commander of North East Regional Office ("NERO"). Prior to his promotion, Plaintiff maintained a backlog of incomplete fire origin reports. He was questioned about these reports during his interview for the promotion, and Plaintiff offered thoughts on how backlogs of fire origin reports could be addressed systemically within OSFM. However, the issue of overdue reports continued to plague Plaintiff throughout his tenure in a leadership role. By June 2021, Plaintiff's region had 239 incomplete reports, over three times higher than the next highest region and more than all of the other regions combined. ECF No. 31-8 at 49.

Relevant to Plaintiff's Complaint, in February 2021, Plaintiff emailed OSFM leadership asking them to recognize and celebrate Garret Morgan, an African-American inventor, as part of the observation of national Black History Month. ECF No. 34-1. Plaintiff contends that State Fire Marshal Brian Geraci ("Geraci") later joked that black Labrador Retrievers should be included in publications celebrating Black History Month. ECF No. 34-3 at 169: 11–18. Plaintiff contends that in March 2121, he informed Geraci that the comment was racist in nature, and also sought to initiate a conversation about race relations within OSFM with Geraci and Chief Deputy Fire Marshal Greg Der ("Der"). During the meeting, Plaintiff also cited racially inappropriate comments that had been allegedly made by two other Deputy Chiefs. ECF No. 34-1 at 5.

On June 16, 2021, Plaintiff was told that he was being temporarily transferred to OSFM headquarters so that he could focus on completing his open reports. On August 16, 2021, Der

submitted a disciplinary complaint against Plaintiff, citing Plaintiff's backlog of reports and failure to meet internal deadlines. ECF No. 31 at 9. Because of continued performance issues related to submitting reports, Plaintiff was suspended with pay on October 12, 2021. *Id.* The investigation into Der's complaint against Plaintiff concluded with a finding that Plaintiff had violated OSFM policy regarding fire origin reports. ECF No. 31. The investigation additionally concluded that all allegations against Plaintiff were "sustained," including the allegation that Plaintiff consistently maintained open or late reports, that Plaintiff failed to take supervisory actions to ensure that NERO [deputy fire marshals] completed and submitted their reports, and that Plaintiff was insubordinate by failing to obey written orders to complete open or late reports. *Id.* Plaintiff was restored to full duty on December 1, 2021. On March 18, 2022, Plaintiff waived his right to an administrative hearing and pled guilty to all three charges.

## PROCEDURAL BACKGROUND

Plaintiff filed his initial EEOC complaint against Defendant on February 7, 2022, and an amended complaint on June 16, 2022. ECF No. 14. He received his right to sue letter on November 22, 2022 and filed the present action in this Court on February 17, 2023, asserting claims of race discrimination, color discrimination, and retaliation in violation of Title VII (Counts I-III), violation of the Maryland Fair Employment Practices Act (Count IV), retaliation in violation of the Family and Medical Leave Act (Count V), and violations of 42 U.S.C. § 1981 and § 1983 (Count VI). On May 19, 2023, Defendant filed a Motion to Dismiss the Complaint for Failure to State a Claim and for Lack of Subject Matter Jurisdiction. The Court granted Defendant's Motion as to Counts IV-VI of Plaintiff's Complaint, and denied the Motion as to the remaining counts. ECF No. 14. On May 24, 2024, Defendant filed the instant Motion for Summary Judgment. ECF

No. 31. After the Court granted an extension, Plaintiff responded in opposition on June 28, 2024, and Plaintiff replied on July 12, 2024. ECF Nos. 34, 36.

## DISCUSSION

**Standard of Review**

Pursuant to Rule 56, a movant is entitled to summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(a). *See English v. Clarke*, 90 F.4th, 636, 645 (4th Cir. 2023) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) ("[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." (emphasis in original). An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute could affect the outcome. *Anderson*, 477 U.S. at 248. There is a genuine issue of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012). On the other hand, if after the Court has drawn all reasonable inferences in favor of the nonmoving party and "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted); *see also McMichael v. James Island Charter School*, 840 Fed.Appx. 723, 726 (4th Cir. 2020).

The party seeking summary judgment bears the initial burden of establishing either that no genuine issue of material fact exists or that a material fact essential to the non-movant's claim is absent. *Celotex Corp.*, 477 U.S. at 322–24. Once the movant has met its burden, the onus is on the non-movant to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co.*

4

*v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In order to meet this burden, the non-movant "may not rest upon the mere allegations or denials of [its] pleadings," but must instead "set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed.R.Civ.P. 56(e)).

**Race and Color Discrimination in Violation of Title VII (Counts I and II)**

Plaintiff argues that Defendant engaged in intentional discrimination based on race and color because he was disciplined for failing to submit reports while similarly situated white employees were not. ECF No. 1. Defendant contends that summary judgment is warranted for Counts I and II because Plaintiff is unable to establish a prima facie case of discrimination. ECF No. 31.

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, makes it unlawful "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color ...." 42 U.S.C. § 2000e-2(a)(1). Bringing a claim for discrimination based on color or race requires a plaintiff to proceed using one of two methods. *See Causey v. Balog*, 162 F.3d 795, 800 (D.Md. 1998). The plaintiff may demonstrate through direct or circumstantial evidence that race or color "motivated the employer's adverse employment decision," *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004), or the plaintiff may proceed through the approach adopted in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). Under *McDonnell Douglas*, the plaintiff must first establish a prima facie case of discrimination. *Hill*, 354 F.3d at 285. If the plaintiff establishes a prima facie case, the burden is then shifted onto the employer to assert a legitimate, non-discriminatory reason for the disparate treatment. *McDonnell Douglas*, 411 U.S. at 802. If the employer meets this step, the burden then shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the employer's purported reason was "pretextual." *Venugopal v. Shire Labs.*, 334 F. Supp. 2d 835, 841 (D. Md. 2004), aff'd sub nom, 134 F. Appx. 627 (4th Cir. 2005). As this Court stated in *Venugopal*, "[w]hile the *McDonnell Douglas* framework involves a

5

shifting back and forth of the evidentiary burden, Plaintiff, at all times, retains the ultimate burden of persuading the trier of fact that the employer discriminated in violation" of the statute. *Venugopal*, 334 F. Supp. 2d at 841.

Plaintiff does not allege direct evidence of race or color discrimination by Defendant and must therefore proceed according to the *McDonnell Douglas* framework. To establish a prima facie case of race or color discrimination, a plaintiff must show: (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) disparate treatment as compared to similarly situated employees outside the protected class. *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). While Defendant agrees that Plaintiff is in a protected class based on race and color, and that Plaintiff experienced an adverse employment action, Plaintiff has not sufficiently offered evidence to establish the remaining two elements of the prima facie case.

*Satisfactory Job Performance*

To establish the satisfactory job performance element, "a plaintiff need not 'show that he was a perfect or model employee. Rather, a plaintiff must only show that he was qualified for the job and that he was meeting his employer's legitimate expectations.'" *Gaines*, 2023 WL 2185779, at *11 (quoting *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 225 (4th Cir. 2019). When considering whether an employee is meeting the employer's legitimate performance expectations, "it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000) (internal quotations omitted) (quoting *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998).

Here, Plaintiff is unable to sufficiently demonstrate that he was meeting his employer's legitimate expectations when he suffered an adverse employment action. From his 2018 promotion onward, Plaintiff continuously failed to complete his fire origin reports in a timely manner, despite

6

receiving consistent feedback from his supervisors that he needed to reduce his report backlog. *See* ECF Nos. 31, 34. Throughout his tenure leading NERO, Plaintiff struggled to complete his own investigative reports, and to ensure that his supervisees timely submitted their reports, and the record is replete with evidence.  Notably, by June 2021, Plaintiff's region had 239 incomplete reports, over three times higher than the next highest region and more than all of the other regions combined. ECF No. 31-8 at 49. On June 16, 2021, OSFM took action to correct the issue. Der provided Plaintiff with an OSFM "Form 17," informing Plaintiff that he was being temporarily transferred to OSFM headquarters so that he could focus on completing his open reports. *Id.* at 5. Plaintiff's existing duties and responsibilities were temporarily delegated to other personnel. *Id.* at 5–6. Plaintiff was assigned a peer evaluator to review and approve his reports and was given the performance expectation that he complete five reports per month. *Id.* at 6. However, Plaintiff failed to utilize his transfer to headquarters to sufficiently reduce his report backlog. On August 10, 2021, Plaintiff received personnel counseling, and was informed that he had failed to meet three report submittal and approval deadlines. ECF No. 31-5 at 58. He was further informed that additional "occurrences in failing to meet established deadlines for overdue report submittals and approvals will continue to follow progressive disciplinary procedures." *Id.* On August 16, 2021, Der filed a disciplinary complaint against Plaintiff, alleging that Plaintiff had been ordered to complete open or late reports, that Plaintiff had failed to submit the reports in question, and that Plaintiff had also failed to supervise his subordinates by ensuring that they submitted their open or late reports. ECF No. 31-8 at 1. However, even after Der's complaint was filed, Plaintiff was given opportunities to complete reports. Plaintiff attempted to submit two reports, but they were not the reports that Plaintiff had been ordered to submit, and they were improperly completed. On October 12, 2021, Plaintiff was administratively suspended. ECF No. 31-8 at 40.

In sum, from 2018 through his suspension, Plaintiff repeatedly failed to complete required reports, despite being ordered to on numerous occasions, and being transferred so that he could focus solely on his report backlog. Given this performance history, Plaintiff has failed to meet his burden in establishing that he was meeting his employer's legitimate expectations at the time he was suspended.

*Disparate Treatment Compared to Similarly Situated Employees*

Defendant also argues that Plaintiff has failed to establish that any similarly situated employees outside of his protected class were treated differently than Plaintiff. ECF No. 31. Plaintiff responds that he was subjected to disproportionate scrutiny regarding his report backlog and that white regional commanders with backlogs of overdue reports did not face the same disciplinary measures. ECF No. 34-1.

"Where a plaintiff attempts to rely on comparator evidence to establish circumstances giving rise to an inference of unlawful discrimination . . . '[t]he similarities between comparators . . . must be clearly established to be meaningful.'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 Fed.App'x 745, 748 (4th Cir. 2017) (quoting *Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 265 (4th Cir. 2008)). "In the employee discipline context, a prima facia case of discrimination is established if the plaintiff shows that [she] 'engaged in prohibited conduct similar to that of a person of another race [or sex] . . . and . . . that disciplinary measures enforced against the plaintiff were more severe than those enforced against the other person.'" *Kelley v. U.S. Parcel Serv., Inc.*, 528 Fed.App'x 285, 286 (4th Cir. 2013) (quoting *Moore v. City of Charlotte*, 754 F.2d 1100, 1105-06 (4th Cir. 1985)).

Here, Plaintiff cannot provide the Court with any sufficient examples of comparators who engaged in similar misconduct and received better treatment. *See* ECF No. 34-1. Plaintiff argues

vaguely that white "Regional Commanders Jason Mowbray, John Nelson, Matthew Stevens, and Sander Cohen...had a backlog of overdue reports, and none were subjected to the level o[f] scrutiny, harassment, or disciplinary actions as [Plaintiff]." *Id.* at 35. However, beyond his own attestations, Plaintiff provides no information as to when these individuals served in OSFM, by whom they were supervised, or most critically, the nature and extent of their report backlogs. To the contrary, the record demonstrates that Plaintiff's backlog was substantially longer than that of any of the supposed comparators. Without additional details regarding the misconduct that the white employees allegedly engaged in, the Court is unable to find that the similarities between Plaintiff and the named comparators are meaningful. *SeeSwaso*, 698 Fed.App'x at 748. In a footnote, Plaintiff also attempts to offer a list of 31 white employees as comparators, claiming that all the individuals listed also had overdue reports. Plaintiff offers no other information beyond their names. See ECF No. 34-1 at 7. Without further information, this list does not advance Plaintiff's argument.

Because Plaintiff has failed to show that he was satisfactorily performing his job and that other employees outside of his protected classes were treated more favorably, he has failed to make out prima facie cases of discrimination based on race or color.

*Defendant's Purported Reason for Terminating Plaintiff was not Pretextual*

Even if Plaintiff could establish a prima facie case, he has failed to rebut Defendant's legitimate, non-discriminatory reason for terminating his employment: namely, his unsatisfactory performance. As explained above, Plaintiff's performance deficiencies were well-documented. Plaintiff has failed to rebut this evidence by showing that he *was in fact* satisfactorily performing the functions of his job or that other similarly situated employees were more leniently disciplined for similar violations. Plaintiff argues that "[i]f OSFM and its agents were truly concerned about reducing the backlog, it would have provided Plaintiff with the added resources to accomplish the

task. Their refusal to assist Plaintiff in managing and reducing the backlog highlights the pretextual nature of the discrimination." ECF No. 34-1. However, by all accounts, Plaintiff *was* provided with assistance in reducing the backlog. He was temporarily transferred to headquarters in 2021 in order to solely focus on reducing the number of reports that were open or overdue.

Accordingly, Plaintiff has failed to show that Defendant's proffered non-discriminatory reason is "false" or "unworthy of credence" and therefore, pretextual. *See Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004) (Pretext can be proven "by showing that the explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of" race/sex discrimination (citation omitted)). For these reasons, Defendant's Motion for Summary Judgment is GRANTED as to Counts I and II of the Complaint.

**Retaliation in Violation of Title VII (Count III)**

Plaintiff further asserts that he was retaliated against for raising concerns about racially insensitive comments made by Geraci and other OSFM employees. ECF No. 34-1. Defendant argues that Plaintiff cannot establish a prima facie case, and moves for summary judgement.

A Title VII retaliation claim can be proven "through direct evidence of retaliatory animus or via the application of the of the *McDonnell Douglas* burden-shifting framework." *Roberts v. Glenn Inds. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021). Under the *McDonnell Douglas* framework, a Plaintiff must first establish a prima facie case of retaliation by proving "'(1) that she engaged in a protected activity,' as well as '(2) that her employer took an adverse employment action against her,' and '(3) that there was a causal link between the two events.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (en banc) (quoting *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405-06 (4th Cir. 2005)). After this showing is made, "the burden shifts to the employer to show that it took adverse action for a legitimate non-retaliatory reason."

10

*Roberts*, 998 F.3d at 122. If the employer makes this showing, the burden shifts back to the plaintiff to "rebut the employer's evidence by demonstrating the employer's purported non-retaliatory reasons were pretext for discrimination." *Id.*

Here, Defendant does not dispute that Plaintiff engaged in protected activity or that Plaintiff was later subject to adverse treatment. However, Defendant does dispute the nexus between Plaintiff's protected activity and the disciplinary actions that were taken by its agents. ECF No. 34-1. "To establish a nexus, a plaintiff can either show a temporal proximity between the protected activity and adverse action, or that other relevant evidence indicates 'continuing retaliatory conduct and animus' toward the plaintiff." *Alberti v. Rector and Visitors of the University of Virginia*, 65 F.4th 151, 156 (4th Cir. 2023) (quoting *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007)). Here, Plaintiff cannot show that the protected activity occurred close enough in time to his transfer, suspension, investigation, or discipline to allow for an inference of racial animus, or any other relevant evidence that would suggest a connection between the events. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) ("an employer's knowledge of protected activity and an adverse employment action" must be "very close"). Plaintiff engaged in protected activity in March 2021, by initiating a conversation with his supervisors about racially insensitive workplace conduct. He was not transferred until June 2021, three months later. The time between the protected activity and his suspension, investigation, and discipline is even further attenuated. While Geraci's alleged comments are troubling, there is no evidence to suggest that Plaintiff's complaint about the conduct caused Plaintiff to be retaliated against. As Plaintiff cannot establish a causal link between the protected activity and the adverse employment actions, he cannot establish a prima facie case of retaliation. Further, Plaintiff is unable to show that Defendant's legitimate, non-retaliatory reason for taking action against Plaintiff—his backlog of

reports—is pretextual. Defendant's Motion for Summary Judgment is GRANTED as to Count III of the Complaint.

## CONCLUSION

For the reasons set forth in this Memorandum Opinion, Defendant's Motion for Summary Judgment (ECF No. 33) is GRANTED as to Counts I, II, and III of the Complaint. A separate Order will follow.

Date: 16 July 2024

A. David Copperthite
United States Magistrate Judge